**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradley Weger,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-12-8029-PCT-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Plaintiff Bradley Weger seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("Commissioner"), which denied him disability insurance benefits under the Social Security Act. (Doc. 1.)[1] Plaintiff asks this Court to vacate the Commissioner's denial and remand for an award of benefits. (Doc. 16.) Defendant has responded, Plaintiff has replied, and the matter is fully briefed. (Doc. 21; Doc. 22.) After reviewing the briefs, the Court finds that the Commissioner's decision is supported by substantial evidence and free from harmful legal error. The Court will thus affirm the decision of the Commissioner.

## BACKGROUND

Plaintiff is forty-nine years old, and has a history of arthritis. (Doc. 16 at 3.)

---

[1] "Doc." refers to the documents in this Court's file. "Tr." refers to the administrative transcript. A certified copy of the administrative transcript was provided to this Court by the Commissioner of the Social Security Administration on May 1, 2012. (See Doc. 9.)

Plaintiff filed an application for Social Security disability insurance benefits on August 7, 2008. (Tr. 12.) In his application, he alleged that he became disabled as of March 31, 2007 (otherwise referred to as "disability onset date"). (Id.) Plaintiff had acquired sufficient quarters of coverage under the Social Security Act to remain insured through December 31, 2011. (Id.) When applying for disability, Plaintiff alleged inability to work due to arthritis and fibromyalgia, along with an affective disorder. (Id. at 15.)

Plaintiff's application was denied initially on November 25, 2008, and upon reconsideration on May 29, 2009. (Id. at 12.) Plaintiff sought a hearing before an administrative law judge ("ALJ"), and the hearing was held on June 24, 2010. (Id.) On October 22, 2010, the ALJ determined that Plaintiff was not disabled for the purpose of receiving disability insurance benefits. (Id. at 23.) This decision became the Commissioner's final decision when the Social Security Appeals Council denied review. (Doc. 16.)

## STANDARD OF REVIEW

When reviewing a Social Security appeal, the Commissioner's decision must be affirmed if it is supported by substantial evidence and he applied the correct legal standards. See Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing the Commissioner's factual determinations, acting through the ALJ, this Court will affirm if there is substantial evidence supporting those determinations. See Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).

Substantial evidence is more than a mere scintilla, but less than a preponderance. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion based on the entire record. Howard, 341 F.3d at 1011; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

If the evidence can reasonably support either affirming or reversing the

Commissioner's conclusion, the Court may not substitute its judgment for that of the Commissioner. See Batson, 359 F.3d at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. See Benton, 331 F.3d at 1040; Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). The ALJ's legal determinations are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. See Edlund, 253 F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir. 2000).

## COMMISSIONER'S DISABILITY EVALUATION PROCESS

To qualify for Social Security disability benefits, Plaintiff must show that he suffers from a "medically determinable physical or mental impairment" that prevents him from performing his prior work activities and any other substantial gainful employment that exists in the national economy, and that the impairment "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). Further, Plaintiff's disabled status must have existed on or before his date last insured. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Tidwill v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1459 (9th Cir. 1995).

Social Security regulations prescribe a five-step evaluation process for an ALJ to determine if a claimant is disabled within the meaning of the Social Security Act. See Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520. At step one, the ALJ determines if the claimant is presently engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(b). If the claimant is engaged in substantial gainful activity, then he is not disabled. If not, the ALJ moves to step two to determine if the claimant has impairments or a combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities and are thus "severe" within the meaning of the regulation. See id. § 404.1520(c).

At the third step, the ALJ evaluates if the claimant's impairment meets or medically

equals the criteria of a listed impairment found in Appendix 1 of Subpart P of Regulation No. 404.  If yes, and the impairment meets the requirements for duration under 20 C.F.R. § 404.1509, the claimant is disabled.  If the claimant fails to meet or equal the criteria or fails the duration requirement, the ALJ's analysis moves to step four.  See 20 C.F.R. § 404.1520(e).

Under step four, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the continued ability of the claimant to perform physical or mental work activities despite his impairment or combination of impairments.[2]  See id.  The ALJ also determines if the claimant's RFC allows him to perform past relevant work.  See id. § 404.1520(f).  If yes, the claimant is not disabled.  If not, the analysis proceeds to a fifth step where the burden shifts to the Commissioner to demonstrate that the claimant is not disabled by presenting evidence that the claimant retains sufficient RFC to adjust to perform other jobs that exist in significant numbers either in the region where the claimant lives or in several regions of the country.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g).

In determining whether Plaintiff was disabled from his disability onset date, March 31, 2007, the ALJ moved through steps one, two, and three without finding that Plaintiff was disabled, but finding that he had the following severe impairments: fibromyalgia and arthritis. (Tr. 15.)  The ALJ found that Plaintiff's affective disorder, however, was non-severe. (Id.)  Between steps three and four, the ALJ evaluated Plaintiff's RFC and found that he was limited to light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except limited in various ways, such as "to frequently reaching in all directions and frequently handling and fingering." (Id.)  Based on Plaintiff's RFC assessment, at step four the ALJ found that Plaintiff could not perform his past relevant work due to his impairments. (Id. at 21.)  However, the ALJ found at step five that Plaintiff retained sufficient RFC to adjust to perform other jobs existing in significant numbers in the national economy.  See 42 U.S.C. §

---

[2] Mental limitations, nonexertional capacity, considers all work-related limitations and restrictions that do not depend on an individual's physical strength, such as difficulties in concentration.  SSR 96-8p.

- 4 -

1  423(d)(2)(A); 20 C.F.R. § 404.1520(g).  (Id. at 22.)

## DISCUSSION

### A. Step Five of the Sequential Evaluation Process

At the fifth step, the burden shifts to the Social Security Administration to demonstrate that the claimant is not disabled and that he can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy. The ALJ considers the fact that the claimant cannot do the work that he has done in the past because of a severe impairment, considers the claimant's RFC, the claimant's age, education, and work experience, and determines whether the claimant can do any other work in the national economy. The ALJ will find the claimant disabled if the claimant is unable to adjust to any other work. See 20 C.F.R. §§ 404.1520(g), 416.920(g). See also Lockwood v. Comm'r of Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010) (where claimant establishes that she suffers from a severe impairment that prevents her from doing past work, burden shifts to the Commissioner to show that she can perform some other work); Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (the burden shifts to Commissioner at step five to show the claimant can do other kinds of work).

The step five analysis includes a detailed assessment of the medical evidence, the claimant's daily activities, prior work record, any functional restrictions and limitations, medication and other treatment for relief of symptoms, and information and observations by treating and examining physicians and third parties regarding the nature and extent of the claimant's symptoms. See 20 C.F.R. §§ 404.1529, 416.929. Credibility determinations are the province of the ALJ; however, the ALJ must make specific findings which support a conclusion that the claimant's allegations of severity are not credible. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

### B. ALJ Rationale

The ALJ found conflicting opinion evidence in this case. (Tr. 19-21.) The ALJ weighed the conflicting opinions and concluded that Plaintiff was not disabled. (Id.) The

- 5 -

ALJ found that although Plaintiff could not return to his past relevant work, he maintained a sufficient RFC to perform other jobs existing in significant numbers in the national economy. (Tr. 22.)

Plaintiff argues that the ALJ decision is based on reversible legal error and does not rest upon substantial evidence. Specifically, he argues that the ALJ erred by: (1) failing to accord adequate weight to the opinion of his treating physician, Dr. Sielski; and (2) erroneously relying on only select portions of the opinion of Dr. Linner. (Doc. 16 at 4-7.)

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. Lester, 81 F.3d at 830. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

An ALJ must accord "controlling weight" to a treating doctor's opinion where medically-approved diagnostic techniques support the opinion and the opinion is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527(d)(2); Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007); Orn, 495 F.3d at 632-33. If the ALJ does not accord the opinion controlling weight, then the ALJ must look to a number of other factors in determining how much weight to give it, such as the length of the treatment

- 6 -

relationship, frequency of examination, nature and extent of treatment relationship, evidence supporting the treating doctor's opinion, consistency of the opinion, and the doctor's specialization. See 20 C.F.R. § 404.1527(d)(2)-(d)(6).

Similarly, the Ninth Circuit generally holds that greater weight is to be given to the opinion of an examining physician over and above the opinion of a non-examining physician. See Andrews, 53 F.3d at 1041. As with a treating physician, the ALJ may reject the opinion of an examining physician, even if contradicted by a non-examining physician, only by providing specific, legitimate reasons that are supported by substantial evidence in the record. See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

It is solely the duty of the ALJ to weigh the evidence and resolve conflicts in the record. See Edlund, 253 F.3d at 1156. An ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). However, "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." Ryan v. Comm'r of Soc. Sec. Admin., 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

### Treating Physician James Sielski

Dr. Sielski was Plaintiff's treating physician, seeing Plaintiff regarding arthritis in multiple parts of his body since August of 2007. (Tr. 15.) The doctor conducted a medical assessment of Plaintiff in March of 2009. (Tr. 20.) Therein, Dr. Sielski opined that Plaintiff:

> would only be able to sit for thirty minutes and stand for twenty minutes at one time with only being able to sit or stand for one hour total in an eight-hour work day. [Plaintiff] would be able to occasionally lift a maximum of five pounds, but never more. He would not be able to grasp, push, pull, or engage in fine manipulation with either of his hands. [He] would never be able to use his feet for any repetitive movements and would never be able to squat, crawl, or climb. [He] would be occasionally able to bend and reach.

(Id.)

The ALJ decision gave "very little weight" to this opinion, in that Dr. Sielski himself

noted that this assessment was based only on Plaintiff's subjective answers, not a full functional capacity assessment. (Id.) Moreover, Dr. Sielski submitted a second assessment in April of 2010, which differed considerably from the March, 2009 assessment: in April 2010, the doctor opined that Plaintiff's RFC was limited to less than the full range of light work, upgraded from the doctor's March 2009 assessment of less than the full range of sedentary work. (Id.) The ALJ afforded this more recent opinion "great weight" because it was consistent with the Plaintiff's RFC, and because "the fact that Dr. Sielski's original opinion was more restrictive and based on the claimant's allegations alone provides support in challenging the credibility of the claimant's subjective complaints compared to the objective medical evidence." (Id.)

The issue before the Court is whether the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for his decision to favor Dr. Sielski's later opinion. See Lester, 81 F.3d at 830 (stating that a treating physician's opinion may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record).   Here, the Court disagrees with Plaintiff that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Sielski's earlier opinion in favor of the later, more comprehensive opinion.  The ALJ discounted this first opinion because the doctor himself explicitly noted that the opinion was based on Plaintiff's subjective complaints and was not comprehensive. (Tr. 20; 393.) Thus, the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for discounting the doctor's prior opinion and according more weight to the later opinion.

<u>Examining Physician Melissa Linner</u>

Plaintiff underwent a consultative examination in October 2008 with Dr. Melissa Linner, who diagnosed Plaintiff with left hip arthritis and bilateral hand osteoarthritis. (Tr. 15.)   As a result of this examination, Dr. Linner opined that Plaintiff was limited to "occasional balance, stoop, kneel, reach, handle, finger, and feel." (Id. at 19.) Later, after another examination in April 2009, Dr. Linner issued a second opinion. (Id.) In this second

- 8 -

opinion, Dr. Linner modified portions of her RFC assessment, in particular upgrading Plaintiff's "reaching, handling, fingering, and feeling" abilities to "unrestricted." (Id. at 376.)

Plaintiff argues that the ALJ erred by failing to give specific and legitimate reasons for discounting Dr. Linner's earlier RFC assessment finding Plaintiff limited to only occasional reaching, handling, fingering, and feeling, in favor of Dr. Linner's subsequent assessment in which she opined that Plaintiff was unrestricted in these areas. (Doc. 16 at 6-7.) According to Plaintiff, the ALJ should have given greater weight to Dr. Linner's first opinion, which Plaintiff asserts is more consistent with the medical record as a whole, because Dr. Sielski's April 2010 RFC assessment limited Plaintiff to only occasional grasping, handling, and fingering. (Doc. 16 at 7; Tr. 409.)[3]

The Court disagrees with Plaintiff that the ALJ improperly accorded more weight to the State agency doctors' opinions. The ALJ explicitly discussed his reasons for favoring Dr. Linner's second, more up-to-date assessment which listed Plaintiff's abilities in these areas as "unrestricted." While it is true that Dr. Sielski's RFC assessment of April 2010 listed some of these abilities as limited to occasional use, rather than unrestricted use like Dr. Linner did, it is "solely the duty of the ALJ to weigh the evidence and resolve conflicts in the record." See Edlund, 253 F.3d at 1156. Here, that is just what the ALJ did – weigh the evidence and resolve the conflicts between Dr. Linner's earlier and later reports, along with the reports of Dr. Sielski.

It is not the role of this Court to second-guess the ALJ's determinations concerning

---

[3] Plaintiff also claims that the medical records of examining physician Dr. Shakir support his contention that the greater weight of the evidence shows that he is limited in his grasping and handling abilities. (Doc. 16 at 7.) The Court notes that Plaintiff's supported citation to the record on this point actually contradicts that assertion: the ALJ correctly found that Dr. Shakir "did not notice any active joint swelling of the proximal interphalangeal, distal interphalangeal, metacarpophalangeal, wrist, elbow or shoulder." (Tr. 19; 381.) Thus, Plaintiff's claim that Dr. Shakir's records also support his argument on this point is not merely cursory, but in fact wholly incorrect.

the weight he gave to each report and his decisions sorting out conflicts in the record, so long as the ALJ applied the correct legal standards and properly set forth specific and legitimate reasons in support of those decisions, as he did here. Thus, the ALJ committed no legal error in his disposition of the medical source statements, and therefore the ALJ's final decision that Plaintiff was not disabled under the Social Security Act will be upheld.

## CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED affirming** the decision denying disability benefits.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendant and terminate this action.

DATED this 26th day of April, 2013.

Stephen M. McNamee
Senior United States District Judge